IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NOAH PAYTON,

Plaintiff,

v.

MERCURY TECHNOLOGIES, INC.,

Defendant.

Case No. 25-cv-10397-CRB

**ORDER GRANTING MOTION TO DISMISS**

Plaintiff Noah Payton brings suit against his former employer, Defendant Mercury Technologies, Inc., in a dispute over stock options. See Compl. (dkt. 1). Because the Court concludes that Payton fails to state a claim for breach of the parties' Early Exercise Notice and Restricted Stock Purchase Agreement, and because Payton's other claims rely in large part on such a breach, the Court GRANTS Mercury's motion to dismiss, Mot. (dkt. 15), with leave to amend.

## I.    BACKGROUND

Mercury is a "design-focused business banking fintech" company. Compl. ¶ 18. Payton began work at Mercury in July of 2020 as a Compliance Director. Id. ¶ 22. His compensation "included the substantial stock option grant of 16,802 shares of Mercury's Common Stock." Id. ¶ 25. In early 2021, Mercury anticipated a valuation increase and encouraged employees to "early exercise" their stock options and file 83(b) elections. Id. ¶ 26.[1] On behalf of Mercury, Payton authored an overview with FAQs about the exercise

---

[1] An 83(b) election is filed "[w]hen substantially nonvested property is transferred in connection with the performance of services." I.R.S. Form 15620 (2025) at 2.

program.  See Berkowitz Decl. Ex. A (dkt. 15-2).[2]  That overview stated: "If you depart Mercury, Mercury may buy back unvested shares at the price you paid for them."  Id. at 5; see also id. ("You cannot sell shares that are unvested.").

Payton opted in, early exercising options for 16,802 shares of Mercury Common Stock and filing an 83(b) election in May of 2021.  Compl. ¶ 26.  The Early Exercise Notice and Restricted Stock Purchase Agreement that Payton entered into with Mercury stated that Payton elected "to exercise his . . . option to purchase . . . shares of the Common Stock . . . of [Mercury]," and that of those shares, some were vested and some "have not yet vested."  Berkowitz Decl. Ex. B (dkt. 15-3) ¶ 1.[3]  That agreement stated that "[i]n the event of the voluntary or involuntary termination of [Payton's] Continuous Service Status with [Mercury] for any reason . . . [Mercury] shall upon the date of such termination . . . have an irrevocable, exclusive option . . . for a period of 3 months from such date to repurchase all or any portion of the Unvested Shares . . . held by [Payton] as of the Termination Date at the original purchase price per share."  Id. ¶ 3(a)(i) (emphasis added). It further stated that:

> Unless [Mercury] notifies [Payton] within 3 months from the Termination Date that it does not intend to exercise its Repurchase Option with respect to some or all of the Unvested Shares, the Repurchase Option shall be deemed automatically exercised by [Mercury] as of the end of such 3-month period following the Termination Date, provided that [Mercury] may notify [Payton] that it is exercising its Repurchase Option as of a date prior to the end of such 3-month.

Id. ¶ 3(a)(ii) (emphasis added).  As to notice, the agreement stated that

> Unless [Payton] is otherwise notified by [Mercury] . . . that [Mercury] does not intend to exercise its Repurchase Option as to some or all of the Unvested Shares to which it applies at the time of termination, execution of this Agreement by [Payton] constitutes written notice to [Payton] of [Mercury's] intention to exercise its Repurchase Option with respect to all Unvested

---

[2] This document is incorporated by reference in the complaint.  See Compl. ¶ 27.
[3] This document is incorporated by reference in the complaint.  See Compl. ¶¶ 26, 27, 45–48.

Shares to which such Repurchase Option applies.

Id. The agreement also stated as to payment that

> [Mercury], at its choice, may satisfy its payment obligation to [Payton] with respect to exercise of the Repurchase Option by either (A) delivering a check to [Payton] in the amount of the purchase price for the Unvested Shares being repurchased, or (B) in the event [Payton] is indebted to [Mercury], canceling an amount of indebtedness equal to the purchase price for the Unvested Shares being repurchased, or (C) by a combination of (A) and (B).

Id. Finally, the agreement stated that "As a result of any repurchase of Unvested Shares pursuant to this Section 3(a), [Mercury] shall become the legal and beneficial owner of the Unvested Shares being repurchased." Id.

Payton resigned from Mercury effective January 20, 2023. Compl. ¶ 31. For quite some time, Payton did not receive any payment from Mercury in connection with a stock repurchase, or any notice that Mercury had exercised its Repurchase Option. Id. ¶ 33. Over a year after he left, Payton received an email from Mercury's Head of People reminding him of his confidentiality obligations; he interpreted the email as a "thinly veiled threat." Id. ¶ 34. In January of 2025, Payton received an email from Carta, Mercury's equity management platform, about a new stock certificate. Id. ¶ 35. This information confirmed to Payton that he was the rightful owner of the Mercury stock. Id. In July of 2025, Payton began exploring a secondary market sale of 50% of his Mercury shares to fund a personal venture. Id. ¶¶ 36, 37. In August of 2025, Payton disclosed to Mercury his intent to sell. Id. ¶ 38.

In October of 2025, Mercury sent Payton a letter titled "Notice of Automatic Repurchase of Noah Payton's Unvested Shares," which stated that Mercury had automatically exercised its Repurchase Option on April 20, 2023. Id. ¶ 40. The letter stated that Mercury's Repurchase Option on over 100,350 unvested shares "was automatically exercised by [Mercury] effective April 20, 2023" pursuant to Section 3(a)(ii) of the parties' agreement. Berkowitz Decl. Ex. C (dkt. 15-5) at 11. The letter asserted that

3

Mercury's repurchase "was effective as of that date," and that Mercury had sent Payton "the aggregate purchase price of $19,668.60" on October 22, 2025. Id. Payton alleges that this letter and payment were sent "more than thirty months" after his resignation. Compl. ¶ 40. He also alleges that Mercury's check of $19,668.60 "substantially undervalued the stock price." Id. ¶ 41.

Payton brought suit against Mercury on December 4, 2025. See Compl. The complaint includes causes of action for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) conversion, (4) unjust enrichment, and (5) declaratory relief. Id. Mercury moves to dismiss for failure to state a claim. See Mot.; Reply (dkt. 21). Payton opposes the motion. See Opp'n (dkt. 19).

## II.    LEGAL STANDARD

Under Rule 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. The Court may base dismissal on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (cleaned up). A complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned up). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a 12(b)(6) motion. Id. (citing Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)). When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S.

308, 322 (2007).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. Proc. 15(a)(2). A court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

## III.    DISCUSSION

Mercury moves to dismiss all of Payton's claims. See Mot.

### A.    Breach of Contract

The Court starts with the breach of contract claim. "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 250 P.3d 1115, 1121 (Cal. 2011) (citing Reichert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968)). The element in dispute here is breach. Payton alleges that Mercury breached the parties' agreement by: (1) "Failing to provide timely payment regarding the exercise of its repurchase option, as required by Section 3 of the Agreement"; (2) "Purporting, over two years after Payton's resignation, to have automatically exercised its repurchase option retroactively, despite never having tendered payment as required nor having affected relevant changes or notices in the Stock Certificates issues [sic] on its own equity management platform"; and (3) "Tendering payment for unvested shares at a price that substantially undervalued the stock, in violation of the Agreement's requirement that the purchase price reflect fair market value as determined in good faith by Mercury's board." Compl. ¶ 47. In its opposition brief, Payton acknowledges that Mercury possessed repurchase rights, but asserts that "[t]he case is about whether Mercury lawfully and timely exercised those rights in the manner the Agreement required." Opp'n at 6.

The problem with Payton's breach of contract claim is that Mercury clearly

United States District Court
Northern District of California

exercised its Repurchase Option under the agreement. The agreement states that unless Mercury notified Payton otherwise within three months of his termination, "the Repurchase Option shall be deemed automatically exercised by [Mercury] as of the end of such 3-month period." Berkowitz Decl. Ex. B ¶ 3(a)(ii). Mercury did not notify Payton otherwise within three months. Accordingly, under the agreement, Mercury automatically exercised its option.[4] See, e.g., Seigl v. Cohesity, Inc., No. H048981, 2022 WL 16918761, at *1 (Cal. Ct. App. 2022) (involving a company's right to repurchase unvested shares from its terminated board member in which the company's "repurchase of such shares was automatic unless [company] specifically notified [former board member] it had elected not to repurchase the unvested shares"). Mercury's exercise was therefore valid.

Mercury did not breach the agreement or fail to exercise its option by not paying Payton in connection with its exercise. See Compl. ¶ 47(a). The parties could have chosen to make payment a precondition to Mercury's exercise of its Repurchase Option, but payment is not inherently a precondition. See Schomaker v. Osborne, 250 Cal. App. 2d 887, 892–93 (1967) ("An option may specify the method of acceptance. According to their terms, some options permit acceptance by mere notice, others by payment or tender of all or part of the purchase price."); Lawrence v. Settle, 182 Cal. App. 2d 386, 389 (1960) ("It is not necessary that the acceptance be accompanied by a tender of the purchase price unless the option so provides.") (citing Cates v. McNeil, 169 Cal. 697, 705 (1915)). Thus, in Cates, 169 Cal. at 706, the court held that "There is nothing in the option clause which requires payment of the price of the land to be made or tendered when the option right is exercised in order to constitute an acceptance," while in Fabares v. Benjamin, 180 Cal. App. 2d 264, 270 (1960), the court held that "[b]y clear and unmistakable language[,] payment of the $58,000 was made a condition precedent to Benjamin's exercise of the option." Here, contrary to Payton's interpretation of the agreement, payment was not a

---

[4] Because Mercury automatically exercised its option, the Court rejects Payton's argument that Mercury's letter to Payton in October of 2025 was an exercise of its Repurchase Option that occurred "long after the contractual repurchase period had expired." See Opp'n at 10.

United States District Court
Northern District of California

precondition to exercise the option. See Berkowitz Decl. Ex. B ¶ 3(a)(ii) ("the Repurchase Option shall be deemed automatically exercised by [Mercury]").[5] Reading one into the agreement would render the "automatically executed" language meaningless.

Because Mercury automatically exercised its Repurchase Option, it also did not breach the agreement by "[p]urporting, over two years after Payton's resignation, to have automatically exercised its repurchase option retroactively, despite never having tendered payment as required nor having affected relevant changes or notices in the Stock Certificates issues [sic] on its own equity management platform." See Compl. ¶ 47(b); see also Opp'n at 10 (arguing that Mercury breached the agreement because "Mercury did not . . . provide notice of a repurchase, or issue documentation reflecting a change in ownership for more than two years."). As discussed above, failure to tender payment does not invalidate Mercury's exercise. Payton does not point to any provision in the agreement requiring Mercury to "affect[] relevant changes or notices in" its stock certificates. See id. And the agreement states that "execution of this Agreement by [Payton] constitutes written notice to [Payton] of [Mercury's] intention to exercise its Repurchase Option with respect to all Unvested Shares to which such Repurchase Option applies." Berkowitz Decl. Ex. B ¶ 3(a)(ii). So, per the agreement, Payton did have notice of Mercury's exercise.

Mercury also did not breach the agreement by "[t]endering payment for unvested shares at a price that substantially undervalued the stock." Compl. ¶ 47(c). Payton alleges that Mercury sent him a check for $19,668.60 in payment for his unvested shares. See id. ¶ 41. But he does not allege that that amount is less than the original price per share. The

---

[5] Nevertheless, "Once an option to buy is exercised, the option ceases to exist and is replaced by a binding contract of purchase and sale." Schomaker v. Osborne, 250 Cal. App. 2d 887, 830 (1967). The Court does not read the complaint as alleging a breach of that contract. See Compl. ¶ 47; see also Crocker v. Grandi, 189 Cal. App. 2d 431, 437 (1961) ("where an agreement fixes the time for exercising an option but does not fix the time for making payment, and notice of exercise of option is given within the time prescribed, a reasonable time thereafter is allowed the purchaser in which to tender payment."). Mercury addresses a related point: "even if the contract had required Mercury to pay within some (shorter) specific period of time, a breach of such a timing requirement would not invalidate the repurchase option or otherwise give Mr. Payton a right to unvested shares." Mot. at 7 (emphasis added). The Court agrees with this position.

agreement provides that Mercury can satisfy its payment obligation by delivering Payton a check "in the amount of the purchase price for the Unvested Shares being repurchased." Berkowitz Decl. Ex. B ¶ 3(a)(ii). Payton's own overview with FAQs about the exercise program stated: "If you depart Mercury, Mercury may buy back unvested shares at the price you paid for them." Berkowitz Decl. Ex. A at 5. Payton does not identify any provision in the agreement stating that Mercury must pay the "fair market value." See Compl. ¶ 47(c).

Because Payton has failed adequately to allege a breach of the parties' agreement, the breach of contract claim fails. Payton's contention that whether Mercury's conduct "ultimately complied with the Agreement presents factual and legal questions not suitable for resolution on a Rule 12(b)(6) motion," Opp'n at 10, is simply incorrect. There are no disputes of fact here about what Mercury did or what the contract says—only the legal question of whether Mercury's conduct breached the contract. "[U]nder California law, the interpretation of a contract, including the resolution of any ambiguity, is a question of law for the court." Westport Ins. Corp. v. N. California Relief, 76 F. Supp. 3d 869, 878 (N.D. Cal. 2014) (citing Sprinkles v. Associated Indem. Corp., 188 Cal. App. 4th 69, 76 (2010)); Canyon Vineyard Estates I, LLC v. Dejoria, 78 Cal. App. 5th 995, 1003 (2022) ("Contract interpretation is a question of law."); Scheenstra v. Cal. Dairies, Inc., 213 Cal. App. 4th 370, 391 (2013) ("Absent a factual dispute, the interpretation of [a contract] and its application to undisputed facts are questions of law."). The Court therefore DISMISSES the breach of contract claim.

### B.    Remaining Claims

The allegations underlying Payton's claim for breach of the implied duty of good faith and fair dealing are almost exactly the same as those underlying the breach of contract claim. See Compl. ¶ 53(a)–(c) (alleging that Mercury interfered with Payton's right to receive the benefit of his bargain by failing to provide a timely payment re its exercise, purporting to have automatically exercised, and tendering payment that undervalued the stock). The only additional allegation is that "Mercury unfairly interfered

with Payton's right to receive the benefits of the Agreement by . . . objecting to lawful secondary market sales and issuing threats . . . in an effort to chill Payton's exercise of contractual rights." Id. at ¶ 53(d). But "a party cannot breach the implied covenant by engaging in acts of conduct consistent with the express provisions of a contract." Stewart v. Screen Gems-EMI Music, Inc., 81 F. Supp. 3d 938, 965 (N.D. Cal. 2015). Payton fails to allege how Mercury's conduct was contrary to the express provisions of the contract or which contractual rights he was unable to exercise as a result of Mercury's conduct. Under the agreement, Mercury had the right to repurchase, automatically, Payton's unvested shares when he left. See Berkowitz Decl. Ex. B ¶ 3(a)(ii). Under the agreement, Payton had the right to early exercise his stock options, and he did so. See Compl. ¶ 26. He therefore can sell the shares that vested during his employment at a profit and with favorable tax treatment. But Payton had no right under the agreement to sell shares he did not own. Cf. Berkowitz Decl. Ex. A at 4 ("You cannot sell shares that are unvested."). The Court therefore DISMISSES the breach of the implied covenant claim.

The allegations underlying Payton's claim for conversion are almost exactly the same as those underlying the breach of contract and breach of the implied covenant claims. See Compl. ¶ 58(a)–(e). They also include the allegation that "[a]t all relevant times, Payton owned and had the right to possess" Mercury shares. Id. ¶ 57. But aside from that conclusory allegation, the complaint and the agreement do not support the notion that Payton had a possessory interest in the unvested shares. See Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 451–52 (1997) (to state a claim for conversion, a plaintiff must "allege it is 'entitled to immediate possession at the time of conversion' . . . . a mere contractual right of payment, without more, will not suffice.") (emphasis in original); see also Berkowitz Decl. Ex. A at 5 ("If you depart Mercury, Mercury may buy back unvested shares at the price you paid for them."). Mercury's "acts of dominion and control over the shares," Compl. ¶ 59, fail to support a claim for conversion as currently pleaded where the contract gave Mercury the right to exercise, automatically, its Repurchase Option, and Mercury exercised that option. The Court therefore DISMISSES the conversion claim.

9

Payton's unjust enrichment claim is also premised on Mercury's "purporting to retroactively exercise a repurchase option, tendering payment at a price far below fair market value, and retaining the shares and their appreciation for itself." Compl. ¶ 64. That claim also fails as currently pleaded because Payton has "not plausibly pleaded an actionable wrong." See Hammerling v. Google LLC, 615 F. Supp. 3d 1069, 1096 (N.D. Cal. 2022). As discussed above, the contract gave Mercury the right to exercise, automatically, its Repurchase Option, and Mercury exercised that option; the contract only required Mercury to pay "the amount of the purchase price," and Mercury appears to have done so. See Berkowitz Decl. Ex. B ¶ 3(a)(ii). The Court therefore DISMISSES the unjust enrichment claim.

Finally, Payton's declaratory relief claim relies on the existence of a controversy between the parties "concerning their respective rights and duties under the Agreement and related equity agreements." Compl. ¶ 68; see also Opp'n at 19. Because the Court dismisses Payton's other claims, it also DISMISSES the declaratory relief claim. See Hammerling, 615 F. Supp. 3d at 1097 (if the underlying claims are dismissed, there is no basis for declaratory relief).

The Court therefore dismisses the complaint in its entirety.

### C.    Leave to Amend

Mercury asks that dismissal be with prejudice. See Mot. at 15 (arguing that the complaint cannot be cured by amendment). However, the Court will allow Payton to amend. While the Court rejects the theory, upon which most of the complaint relies, that Mercury failed validly to exercise its option, Payton might yet be able to state a claim in connection with the events following that exercise. See Opp'n at 20 ("amendment could address matters Mercury itself places at issue, including the timing and effect of payment").

### IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the motion with leave to amend. If Payton wishes to amend the complaint, he must do so within thirty days of this Order.

10

Failure to amend may result in dismissal with prejudice.

**IT IS SO ORDERED.**

Dated:  April _1_ , 2026

CHARLES R. BREYER
United States District Judge